UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JEANETTE JACKSON                                                                                    PLAINTIFF

v.                                            CASE NO. 4:07-CV-00276 GTE

UNITED PARCEL SERVICE, INC.                                                           DEFENDANT

## ORDER

Presently before the Court is Defendant's Motion for Summary Judgment.

**I.      Background**

Defendant United Parcel Service, Inc. ("UPS") hired Jeanette Jackson in 1985.[1] During her employment with UPS, Jackson has been an hourly employee and a member of the bargaining unit represented by the International Brotherhood of Teamsters.[2] Jackson's employment is governed by a collective bargaining agreement between UPS and the Teamsters, which includes a grievance procedure for employees to challenge employment related decisions by UPS.[3]

Pursuant to the collective bargaining agreement, Jackson used her seniority to bid into a "feeder driver" position in May 2006, which involves driving a feeder (tractor-trailer) with a trailer full of packages to pick-up point and/or customer location.[4] Naaman Kelly, the on-road

---

[1] Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 1.

[2] *Id.* at ¶ 2.

[3] *Id.* at ¶ 3.

[4] *Id.* at ¶ 4.

1

feeder supervisor, trained Jackson as a feeder driver, and Jackson passed her training program.[5] Danny Clark, who was in charge of the CDL license test, passed Jackson through that process. Jackson admits that Mr. Clark treated her fairly.[6]

Plaintiff testified that she began as a feeder driver on or about June 7, 2006.[7] Plaintiff also testified that on June 8, 2006, while making a delivery, she had an accident in which the back part of her trailer hit the top part of another tractor and caused damage to the other tractor.[8] Following a vacation, on or about June 16, 2006, she called Feeder Manager, Paul Hall, about reporting back to work on Monday, June 19, 2006.[9] Paul Hall informed Jackson of the decision to disqualify her because of the June 8th accident, and told her she would need to report to her previous position as an air shuttle driver, which she did.[10]

On June 19, 2006, Plaintiff filed a grievance against UPS, asking to be returned to her feeder job and awarded full back pay for the differential in pay between the air shuttle job and the

---

[5]*Id*. at ¶ 5.

[6]*Id*. at ¶ 6, 7.

[7]Exhibit A, Jackson Dep. I p. 60, Defendant's Motion for Summary Judgment ("Defendant's Motion").

[8]*Id*. at 61-63.

[9]Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 10.

[10]*Id*.

feeder position.[11] Plaintiff filed a charge of discrimination on the basis of sex, race, and retaliation on June 27, 2006.[12]

Cedric Williams, UPS's District Labor Manager, made the decision to disqualify Plaintiff from the feeder position in conjunction with Paul Hall.[13] Plaintiff was not privy to the discussions between Paul Hall and Cedric Williams on why she should be disqualified, and has no personal knowledge of the decision-making process.[14] Plaintiff testified that Paul Hall stated that due to the fact that she had an accident within her 30-day training period, he decided to disqualify her.[15] Plaintiff also testified that Paul Hall told her that the matter was "out of his hands" and that she should talk to the UPS Labor Department.[16]

For summary judgment purposes, the parties agree that the Southern Region, which includes Arkansas, uses the 80-hour training rule, 40 hours unproductive and 40 hours productive.[17] Also, for summary judgment purposes, the parties agree that as of the date of

---

[11] *Id*. at ¶ 17.

[12] Plaintiff has two other actions against UPS pending in the Eastern District of Arkansas. Specifically, on June 13, 2005, Plaintiff filed a complaint in Case No. 4:05-cv-877 (SWW). This action is based upon an EEOC charge filed on December 5, 2005, regarding a September 2006 promotion decision that did not involve Paul Hall or Cedric Williams. On September 28, 2007, Plaintiff filed a complaint in Case No. 4:07-cv-00894.

[13] Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 12.

[14] *Id*. at ¶ 15.

[15] Exhibit A, Jackson Dep. I p. 89-90, Defendant's Motion.

[16] *Id.*

[17] Defendant's Response to Plaintiff's Statement of Disputed Facts, ¶ 4.

Cedric Williams' deposition, feeder drivers were not under the 30-day disqualification rule.[18] Naaman Kelly, the on-road feeder supervisor, testified that the policy and procedure for disqualification states that if UPS is going to disqualify a person, it must be done in the first 80 hours of training.[19] After the completion of the 80-hour training program, a person may be disqualified as a feeder driver if the person has three accidents within a one-year period.[20]

Mr. Kelly testified that he approached Paul Hall regarding what he perceived to be an improper disqualification of Plaintiff, but Mr. Hall stated that "the rule is if you have an accident within your first 30 days of [] training . . . you're supposed to be disqualified."[21] Naaman Kelly testified that he also spoke with Durrell Hall, the labor manager, regarding Plaintiff's disqualification, and Durrell Hall stated that Plaintiff was "wrongfully disqualified."[22] Mr. Kelly also testified that, within a week or two after the accident, Durrell Hall informed Kelly that he had received clearance from Cedric Williams and Todd Hyden, the division manager, to place Plaintiff back in her job within a week of the accident.[23] Mr. Kelly testified that subsequently Durrell Hall informed him that the day before "they were supposed to put her back to work" "they received a notice from the EEOC," so "he had to retract everything they had planned to

---

[18]*Id*. at ¶ 8.

[19]Exhibit 2, Naaman Dep. p. 5, Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response").

[20]*Id*.

[21]*Id*. at 13.

[22]*Id*. at 14-15.

[23]*Id*. at 15-16.

do," and because Plaintiff filed an EEOC charge, it "was out of his hands" and became a human resources decision.[24]

On July 28, 2007, pursuant to the collective bargaining agreement, UPS and the Teamsters held a local level hearing on Jackson's grievance.[25] Plaintiff testified that the parties were unable to reach a settlement at the local level, and therefore, the grievance was taken to the next level of the grievance process, referred to as "the panel," a committee comprised of UPS and Teamsters representatives.[26] Although the panel had a meeting scheduled for August in Nashville, during which Plaintiff's grievance could be heard, Plaintiff chose to wait until the September meeting in Little Rock upon recommendation of her Teamsters representative.[27] However, Plaintiff testified that the day before the panel, the parties reached a settlement in which Plaintiff would be reinstated to the feeder job and receive full back pay.[28]

On or about September 26, 2006, Plaintiff returned to work as a feeder driver, the job she currently holds with UPS with full back pay.[29] After the settlement of Plaintiff's grievance, Plaintiff lost no pay or benefits because of the disqualification decision.[30] On December 27, 2006, Plaintiff received her "Right to Sue" letter from the EEOC. On Mach 26, 2007, Plaintiff

---

[24]*Id*. at 16-17.

[25]Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 18.

[26]Exhibit A, Jackson Dep. I p. 22-24, Defendant's Motion.

[27]Exhibit A, Jackson Dep. II p. 19-20, Defendant's Motion.

[28]Exhibit A, Jackson Dep. I p. 24-25, Defendant's Motion; Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 24.

[29]Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, ¶ 25.

[30]*Id*. at ¶ 26.

filed her Complaint in this Court alleging violations of Title VII and 42 U.S.C. § 1981. "Title VII and § 1981 set forth parallel, substantially identical, legal theories of recovery in cases alleging intentional discrimination in employment on the basis of race." *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir. 1997) ("The elements of claims alleging disparate treatment on the basis of race under Title VII and intentional employment discrimination on the basis of race under § 1981 are identical."). Therefore, the same analysis applies to Plaintiff's claims under both provisions.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the

> record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id*. at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988)) (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*.

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. Rule 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

**III.    Motion for Summary Judgment**

In reviewing Plaintiff's discrimination claim, the Court must bear in mind that summary judgment is disfavored in employment discrimination cases, as such cases are "inherently fact-

based." *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005). Nonetheless, "summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case." *Id.*

### A. Disparate Treatment

In an employment discrimination case, the plaintiff must initially present a prima facie case to survive a motion for summary judgment, which raises a rebuttable presumption of discrimination.[31] *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134-35 (8th Cir. 1999). The employer must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1135. If the employer does this, the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual. *Id.*

Plaintiff asserts claims for race and sex discrimination based on a theory of disparate treatment. "To establish a disparate treatment claim, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his her duties; (3) he or she suffered an adverse employment action;[32] and (4) 'circumstances give rise to

---

[31]Because Plaintiff has not submitted "direct evidence" of discrimination, she must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm. *Griffith v. City of Des Moines*, 387 F.3d 733, 736-37 (8th Cir. 2004).

[32]The Court recognizes that the standard for what constitutes an "adverse employment action" is different for the discrimination, disparate treatment, and hostile work environment claims, than for the retaliation claim. The different statutory language, purposes underlying the claims, and the Supreme Court's holding in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), require that result. "The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status," while "[t]he anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation)

an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently.'" *Gilooly v. Missouri Dept. of Health and Senior Servs.*, 421 F.3d 734, 738-39 (8th Cir. 2005).

Defendant argues that Plaintiff cannot establish her prima facie case because she did not suffer an adverse employment action. "An adverse employment action must be one that produces a material employment disadvantage." *Higgins v. Gonzales*, 481 F.3d 578, 584 (8th Cir. 2007). "Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge." *Id.* "Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage do not satisfy the prong." *Id.*

Defendant asserts that Plaintiff admits that UPS reinstated Plaintiff to her position as a feeder driver with full back pay following Plaintiff's disqualification. Furthermore, during the interim disqualification period, Plaintiff was not completely taken out of work, as she went back to her air shuttle driver position, a lateral move from feeder driver. Defendant states that Plaintiff lost no pay, benefits, or seniority. Additionally, Plaintiff chose to delay her grievance proceeding from August to September.

Defendant also asserts that where the alleged adverse action is only temporary and the employer reverses the decision without any net loss, there is no adverse employment action as a matter of law, citing *Carpenter v. Northwest Airlines, Inc.*, 47 Fed. App'x 424, 426 (8th Cir.

---

with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. *Id.* at 2412.

2002); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *Dobbs-Weinstein v. Vanderbilt University*, 185 F.3d 542, 544 (6th Cir. 1999); *Holmes v. American Drug Stores, Inc.*, 2003 WL 21147807, *4-5 (N.D. Ill. 2003); and *Lumbo v. Home Depot USA, Inc.*, 229 F. Supp. 2d 121, 138 (E.D.N.Y. 2002).

Plaintiff contends that her removal from her position as a feeder driver to a lower paying position as a shuttle driver constitutes an adverse employment action. Plaintiff also contends that she experienced depression and anxiety as a result of the stress of the discrimination and retaliation, and is currently taking medication to help her sleep and for anxiety. Additionally, Plaintiff states, "It stands to reason that [Plaintiff] was not gaining seniority as a feeder driver while driving a shuttle vehicle and she was not earning the same amount of money and th[at] one of the purpose[s] of her gaining seniority was to bid on job opportunities that came available. When she was disqualified from the feeder job the value of the seniority that she gained was diminished." Plaintiff explains that she chose to defer attending the panel for a month because it was more cost effective for her to attend a panel in Arkansas than in Nashville, Tennessee.

In *Pennington*, the Eleventh Circuit stated:

> [T]he district court found that Pennington suffered no adverse employment action because Hughes' decision was quickly reversed by Liles who offered Pennington the desired promotion. The caselaw in this area indicates that the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action. *See Breaux v. City of Garland,* 205 F.3d 150, 158 (5th Cir.2000); *Dennis v. County of Fairfax,* 55 F.3d 151, 156 (4th Cir.1995); *Blalock v. Dale County Bd. of Educ.,* 84 F.Supp.2d 1291, 1311 (M.D.Ala.1999). But when an employee loses pay or an employment benefit from a delayed promotion, courts have held that the employment action is not adverse only when the action is rescinded and backpay is awarded. *See Dobbs-Weinstein v. Vanderbilt University,* 185 F.3d 542, 544 (6th Cir.1999); *Benningfield v. City of Houston,* 157 F.3d 369, 378 (5th Cir.1998); *see also Miller*

>*v. Federal Express Corp.,* 56 F.Supp.2d 955, 960 (W.D.Tenn.1999) (rescinding termination did not render action non-adverse in part because plaintiff lost five days of pay and bonuses).

261 F.3d at 1267-68.

Furthermore, in *Dobbs-Weinstein* , the Sixth Circuit rejected the argument that plaintiff's claims for emotional distress and professional reputation damages meant that her claim was viable, stating:

>[T]hat argument places the cart before the horse. A claim for potentially recoverable damages does not transform Venable's decision into an "adverse employment action." Dobbs-Weinstein succeeded in the grievance process, and Vanderbilt's final decision was to grant her tenure. She has not here suffered a final or lasting adverse employment action sufficient to create a prima facie case of employment discrimination under Title VII. To rule otherwise would be to encourage litigation before the employer has an opportunity to correct through internal grievance procedures any wrong it may have committed.

185 F.3d at 546.

The Court finds that Plaintiff has failed to establish her prima facie case of sex and race discrimination, as she cannot establish that she suffered an adverse employment action. It is undisputed that UPS reinstated Plaintiff to her position as a feeder driver with full back pay, and during the interim disqualification period, Plaintiff was not completely taken out of work. Summary judgment is appropriate as to Plaintiff's claims of sex and race discrimination.

**B.     Retaliation**

Title VII prohibits retaliation against an employee who files charges of discrimination. 42 U.S.C. § 2000e-3(a); *Thompson v. Bi-State Development Agency*, 463 F.3d 821, 826 (8th Cir. 2006). As with Plaintiff's disparate treatment claim, absent direct evidence of retaliation, the Court must apply the *McDonnell Douglas* three-part burden-shifting analysis to her retaliation

claim. *Thompson*, 463 F.3d at 826. Under this framework, the Court must first determine whether Plaintiff has presented a prima facie case of retaliation. *Id.*

To establish a prima facie case of retaliation, Plaintiff must present evidence that 1) she engaged in activity protected under Title VII; 2) an adverse employment action was taken against her; and 3) a causal connection between the two. *Id.* "The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for the adverse employment action.'" *Gilooly*, 421 F.3d at 739. "If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination." *Id.* Although Plaintiff did not succeed in her underlying claims, a plaintiff need not succeed on the underlying claims to establish a retaliation claim. *Id.*

Once again, Defendant argues that Plaintiff cannot make out a prima facie case of retaliation because she cannot establish that she has suffered an adverse employment action. The United States Supreme Court recently addressed the requirement of adverse employment actions for retaliation claims brought under Title VII. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). In *White*, the Court set forth the objective standard that "a plaintiff must show that a *reasonable* employee would have found the challenged action *materially* adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (emphasis added) (internal quotations omitted).

Ultimately, the Court in *White* found that a jury could reasonably conclude that the reassignment of responsibilities from forklift duty, a "less arduous and cleaner job," to only standard track laborer tasks would have been materially adverse to a reasonable employee. *Id.* at

2417.[33]  Furthermore, although White did receive backpay, the Court noted that her family had to live for 37 days without income, which many reasonable employees would find to be a serious hardship.  *Id*. at 2417.  Additionally, "White described to the jury the physical and emotional hardship that 37 days of having 'no income, no money' in fact caused," and she obtained medical treatment for her emotional distress.  *Id*.  Thus, the Court found that the jury reasonably concluded that the 37-day suspension without pay was materially adverse, as "a reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former," and "an indefinite suspension without pay could well act as a deterrent, even if the suspended employee eventually received backpay."  *Id*. at 2417-18.

Defendant argues that "[t]he anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  *Id*. at 2414.  Defendant contends that Plaintiff suffered no injury or harm because she lost no pay, benefits, or seniority, and was reinstated to the exact same position she held before her temporary disqualification, and therefore, she cannot establish an adverse employment action as a matter of law.  Defendant further argues that it cannot be said that the temporary disqualification would deter a reasonable person from voicing a complaint of discrimination because, only one week after the disqualification, Plaintiff, who had filed two previous EEOC charges and one previous lawsuit against UPS, filed yet another EEOC charge against UPS.  Moreover, Defendant states that since that time, Plaintiff has filed yet another EEOC charge and two more lawsuits, including this one.

---

[33]The Supreme Court's decision in *White* abrogated *Manning v. Metropolitan Life Ins. Co.,* 127 F.3d 686, 692-93 (8th Cir. 1997), which limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating."

Defendant distinguishes *White* by noting that in that case the employee was suspended for 37 days **without pay**, while here, Plaintiff was never taken out of work, denied income, or left to fear for her job. In fact, she opted to have her grievance heard in September, rather than in August. Thus, Defendant contends that Plaintiff cannot claim that she suffered the type of "serious hardship" that the Supreme Court was concerned with in *White*.

The Court finds that summary judgment is appropriate as to Plaintiff's retaliation claim because, even under the broader standard applicable to retaliation claims, she cannot establish that an adverse employment action was taken against her. As stated by Defendant, the facts in *White* are distinguishable from those in this case.

Accordingly,

IT IS THEREFORE ORDERED THAT Defendant's Motion for Summary Judgment (Docket No. 8) be, and it is hereby GRANTED. Plaintiff's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 28th day of January, 2008.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE